UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-Cr-06002-JEM

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

DAVID ANTHONY ROSTAN, JR.,

     Defendant.

_____/



FILED BY _____ D.C.

JUN 0 4 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## DEFENDANT'S *PRO SE* REPLY TO THE GOVENRMENT'S RESPONSE  TO HIS MOTION TO IMPOSE A REDUCED SENTENCE UNDER THE FIRST STEP ACT

     David Anthony Rostan, Jr., *pro se*, respectfully replies to the government's response to his amended *pro se* motion to impose a reduced sentence pursuant to Section 404 of the First Step Act of 2018, and states:

### BACKGROUND

     1.    On May 9, 1997, Mr. Rostan was charged by Superseding Indictment with five counts including Count 3, which charged that Mr. Rostan "did knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is, a mixture and substance containing cocaine base, that is crack cocaine, in violation of 21 U.S.C. § 841(a)(1)."  (DE24).

     2.    On November 24, 1999, the government filed a previous conviction information under 21 U.S.C. § 851, advising that upon conviction Mr. Rostan who had two prior felony drug convictions would be facing a mandatory life sentence. (DE175).

     3.    On December 9, 1999, Mr. Rostan was convicted after a jury trial on

the the first four counts of the indictment. The jury did not find any specific amount of cocaine base was involved. (DE190).

4.     In the PSI, the probation officer determined that Mr. Rostan' base offense level under § 2D1.1 was 36, based on the combined Guideline amounts for the crack cocaine in Count Three and the cocaine hydrochloride charged in Count Four. Additionally, the Guideline level was enhanced two levels for possession of weapons as charged in Count Five. The resulting Guideline level was a level 38, resulting in a Guideline range of 324-405 months imprisonment. (PSI ¶¶ 34, 76). However, because of the 851 enhancement the term of imprisonment was mandatory life. (PSI ¶ 75). And notably, since Mr. Rostan' sentencing occurred prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (January 12, 2005), the Guideline range at that time was mandatory.

5.     At the March 29, 2000 sentencing, the Court sentenced Mr. Rostan to life imprisonment. (DE:221).

6.     Mr. Rostan appealed his conviction and sentence and it was affirmed. Since that time, Mr. Rostan has filed numerous motions with the Court. However, the one at issue today is the Request for a Reduction in Sentence Pursuant to Section 404 of the First Step Act (2018) filed on March 13, 2019. (DE362).

7.     On December 21, 2018, Congress enacted the Fair Step Act of 2018. Section 404 of the First Step Act independently authorizes a district court to impose a reduced sentence for crack-cocaine convictions where the statutory penalty provisions of the Fair Sentencing Act would have applied had that Act been in effect at the time of the original sentencing.

2

8.      On March 27, 2019, the government responded – arguing that the Fair Step Act had no impact on Mr. Rostan' case. (DE363).

## ARGUMENT

For the reasons set forth below, Mr. Rostan is eligible under Section 404 for the Court to impose a reduced sentence, and the Court should indeed impose a reduced sentence under 21 U.S.C. § 841(b)(1)(C). The government's arguments in opposition are meritless and should be rejected.

1.  **The government's position is inconsistent with the plain language of Section 404.**

    Section 404(b) provides that for defendants previously sentenced,

    > [a] court that imposed a sentence for a covered offense may, on motion of the defendant ..., impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act § 404(b). Section 404 defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a). That is, § 404 refers to the defendant's "offense," and asks whether it is one for which "the statutory penalties . . . were modified"; it does not refer to "relevant conduct." First Step Act § 404(a). Thus, as one court has explained,

> [u]nder the plain language of the Act, whether an offense is a "covered offense" is determined by examining the statute that the defendant violated. See First Step Act § 404(a). If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a "covered offense."

3

*United States v. Davis*, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019) (No. 1:07-cr-245).

Further, an "offense" is a specific term applicable to a concept with specific legal consequences that are distinct from the legal consequences flowing from "relevant conduct." It is a well-settled principle of statutory construction that "[w]hen Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation." *In re Ford*, 574 F.3d 1279, 1283 (10th Cir.2009) (citing *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993)). Among other differences between the defendant's "offense" and his "relevant conduct," the latter is not subject to "statutory penalties" as referenced in the First Step Act. Relevant conduct is a consideration under the Sentencing Guidelines that is used to determine the guideline range in a given case by looking at conduct beyond the elements in the offense of conviction. *See* U.S.S.G. § 1B1.3(a). Relevant conduct does not affect, and certainly cannot increase, the statutory penalties attached to the offense of conviction.

Accordingly, had the Fair Sentencing Act been in effect at the time of Mr. Rostan's offense of conviction, he would have been subject to the penalties in § 841(b)(1)(C) because he was charged with and convicted of possessing with intent to distribute an unspecified quantity of crack cocaine, and because of his prior drug conviction would be facing a statutory maximum of thirty years.  It is a well-established principle that "when [a] statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,

530 U.S. 1, 6 (2000). Although Congress could have directed district courts to do what the government suggests, the legislature did not; instead, in the First Step Act, Congress authorized district courts to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b).

The Court should abide by Congress's determination, and should not consider what the government says it "could have charged" had the Fair Sentencing Act been in effect when Mr. Rostan committed his offense. *See United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019) (No. 1:07-cr-003) (holding court "should refrain from delving into the particulars of the record to determine . . . how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime").

## 2. The government's position would result in a constitutional violation.

The Supreme Court has long held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 483 n.10, 490 (2000). "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 115-16 (2013). *See also Burrage v. United States*, 571 U.S. 204, 210 & n.3 (2014) (applying the rule to facts that increase the penalty range for an offense under 21 U.S.C. § 841(a)(1)). To set

5

the defendant's statutory range under Section 404(b) based on an uncharged quantity found by the judge by a preponderance of the evidence recited in the PSR would violate the Sixth Amendment.

3. **The government's various contentions that *Apprendi* and its progeny "should not apply" are unavailing.**

First, the original sentence was not "lawful at the time it was imposed." *Cf.* Gov. Resp. at 8. The courts' former practice of using uncharged judge-found facts to determine statutory ranges was *always* unconstitutional. It did not just *become* unconstitutional when those cases were decided. When the Supreme Court announces a new rule of constitutional law, whether the Court declares that rule to apply retroactively or not, it does not "imply[] that the right at issue was not in existence prior to the date the 'new rule' was announced." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008). Rather, "the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law." *Id.* "Accordingly, the underlying right necessarily pre-exists [the Supreme Court's] articulation of the new rule." *Id.*

Second, the fact that *Apprendi* and *Alleyne* have been held not to be retroactive "on collateral review," Gov. Resp. at 8-9, is not relevant. Mr. Rostan is not seeking relief "on collateral review." He is seeking relief under Section 404 of the First Step Act, a new statutory remedy that Congress expressly made retroactive. *See* Sec. 404(b) (court may impose a reduced sentence "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed"). While courts have held that the *Apprendi* rule is not retroactive "on collateral

review" because it is procedural rather than substantive within the meaning of *Teague*, that distinction has no bearing on the "relief sought" under Section 404. *Danforth*, 552 U.S. at 271. Instead, the *Apprendi* rule applies because "the source of [the rule] is the Constitution itself," and "the underlying right necessarily pre-exist[ed] [the Supreme Court's] articulation of the new rule." *Id.*

Third, the government's assertion that Section 404 "does not give the courts authority to change the manner of determining quantity," Gov. Resp. at 8, erroneously assumes that courts were ever authorized to use uncharged judge-found facts to determine quantity. "Congress did not unconstitutionally commit determination of drug quantity to a judge for a finding by a preponderance of the evidence. . . . [T]hat commitment was made by the judiciary, not the legislature." *United States v. Buckland*, 289 F.3d 558, 567 (9th Cir. 2002) (en banc); *see also United States v. Cernobyl*, 255 F.3d 1215, 1219 (10th Cir. 2001) ("Section 841(b) itself is silent on the question of what procedures courts are to use in implementing its provisions, and [is] therefore [consistent with] the rule in *Apprendi*."); *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001) ("[T]he statute does not say who makes the findings or which party bears what burden of persuasion," but instead "[left] it to the judiciary to sort out.").

The government is essentially arguing that when Congress enacted Section 404, well after *Apprendi*, *Alleyne* and *Burrage* were decided, it intended, without saying so, that courts would use an unconstitutional practice it had never sanctioned to implement the new statute. But Congress is presumed to legislate in light of constitutional requirements. *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 191

(1991) ("[W]e assume [Congress] legislates in the light of constitutional limitations."); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575 (1988) ("Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it."); *Cannon v. University of Chicago*, 441 U.S. 677, 699 (1979) (It is presumed "that Congress was thoroughly familiar with . . . important precedents from [the Supreme Court] and other federal courts and that it expected its enactment to be interpreted in conformity with them.").

In a further effort to show that Congress intended courts to use the unconstitutional practice used at the original sentencing, the government misstates the statute, asserting that "if the Fair Sentencing Act been *in effect at the time of Defendant's sentencing*, his statutory range would have been 10 years to life due to a drug quantity between 28 and 280 grams and his prior felony drug convictions." Gov. Resp. at 7-8 (emphasis added). Even if were possible to assume that Congress intended courts to follow an unconstitutional practice, Section 404 does not direct courts to impose a reduced sentence as if the Fair Sentencing Act were "*in effect at the time of the defendant's sentencing.*" Instead, Congress defined a "covered offense" as one, *inter alia*, that was "*committed before August 3, 2010,*" and authorized courts to impose a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 [] were in effect *at the time the covered offense was committed.*" Sec. 404(b). The italicized language serves an important purpose. When Congress makes a law retroactive, it must specify to what event the law

retrospectively applies. *See, e.g., Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994). The italicized language makes Section 404 retroactive to past violations -- committed before August 3, 2010 -- *not* past sentencing proceedings.  Nothing in Section 404 says or implies that an unconstitutional practice used at the time the defendant was sentenced may be applied now.

Fourth, the government's assertion that using judge-found facts "at this time does not offend *Apprendi* or *Alleyne* as it does not involve any *increase* in a sentence based on judge-found facts," Gov. Resp. at 7--8 (emphasis in original), is obviously wrong.  Mr. Rostan's statutory range under the Fair Sentencing Act, based on the elements proved to the jury beyond a reasonable doubt, is zero to thirty years.  The government urges the Court to increase that range to 10 years to life based on judge-found facts.  And while the court can decline to grant relief in its discretion under Section 404(c), Gov. Resp. at 9, it cannot impose a sentence below the statutory minimum or above the statutory maximum of the Fair Sentencing Act under Section 404(b), any more than it could do so in imposing a sentence for the first time today.   Rather, because drug quantity increases the statutory range prescribed by the Fair Sentencing Act, it is an element of a separate, aggravated offense, and thus may not be based on uncharged judge-found facts.

Likewise, the government's citation to *Dillon* is unavailing.  There, among other things that have nothing to do with Section 404 motions, the Court said that "any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range." *Dillon v. United States*, 560 U.S. 817, 828 (2010).

9

Here, the government is urging the Court to determine the prescribed statutory range based on judge-found facts.

**4. The Fair Sentencing Act's reduced statutory range results in a reduced Guideline range for Mr. Rostan.**

Not only would the Fair Sentencing Act's reduced penalty structure have applied to Mr. Rostan' crack cocaine conviction had that Act been in effect at the time of his original sentencing since his conviction and sentence were for a "covered offense," but indeed, the reduced statutory maximum would have dictated a reduced advisory Guideline range as well.

Specifically, if Section 2 of the Fair Sentencing Act of 2010 had been in effect at the time of Mr. Rostan' original sentencing, his "offense of conviction" would have fallen under 21 U.S.C. § 841(b)(1)(C), rather than § 841(b)(1)(B).  With an § 851, his maximum statutory term of imprisonment under § 841(b)(1)(C) would have been 30 years (instead of the lifetime maximum he previously faced under § 841(b)(1)(B)). And indeed, with a maximum term of 30 years rather than life, his Guideline offense level under U.S.S.G. § 4B1.2 would have been a level 34 (rather than a level 376), which would in turn have resulted in an advisory Guideline range of 168-210 months imprisonment, rather than the 324-403 month range that applied at the prior sentencing.  Moreover, with sentencing under § 841(b)(1)(C), he would not have had any minimum term of imprisonment, and would have had a reduced minimum term of supervised release  (6 years rather than 8).

**5. Mr. Rostan will *not* receive a "windfall" by being resentenced within the now-reduced statutory and Guideline ranges; rather, he will**

10

receive the precise benefit Congress intended for defendants similarly-situated to him.

The government argues that resentencing Mr. Rostan would be a "windfall" for Mr. Rostan "because the government did not have the foresight to seek a jury determination that the offense involved "28 grams or more" of crack cocaine. GR at 9. But that is *not* a windfall; it is benefit Congress carefully considered and specifically authorized for defendants sentenced prior to the Fair Sentencing Act, because those sentenced after that Act's recalibration of the statutory penalties, were receiving precisely such a benefit. While the government appears to have a policy disagreement with the process Congress established in the First Step Act for determining eligibility for resentencing, that policy disagreement is not a basis on which the Court can or should disregard the plain language and intent of Congress.

Further, the government's premise is inaccurate for multiple reasons. Allowing the courts to resentence defendants like Mr. Rostan whose convictions took place before the enactment of the Fair Sentencing Act promotes equity and reduces disparities. The Fair Sentencing Act was enacted precisely because it was nearly universally recognized that sentences in crack cocaine cases were excessive and had a disparate impact on African-American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). Defendants sentenced since the date of the Fair Sentencing Act have had the benefit of the amendments it made to the statutory penalties for crack cocaine offenses, that were not afforded to Mr. Rostan and similarly situated defendants. Mr. Rostan' case is therefore a perfect example of why Congress decided to take a broad approach in defining which defendants would

11

be eligible for resentencing under the First Step Act: it promotes equity, and remedies inequity.

Granting Mr. Rostan' motion to impose a reduced sentence is thus entirely consistent with both the letter of the First Step Act and its intent of affording relief to defendants who were left serving excessive sentences after the enactment of the Fair Step Act and his motion should be granted.

Notably, since being arrested in this case on December 23, 1996, Mr. Rostan has served over 18 years (approximately 221 months) in custody. He has had time to reflect on his past conduct and dedicate himself to his own rehabilitation so that he can be successful in living a law-abiding life upon release. Since § 404 places no restrictions on the factors the court may consider in imposing a reduced sentence, the Court may – and should – consider all relevant § 3553(a) factors, including post-offense rehabilitation, in imposing a reduced sentence that is sufficient, but not greater than necessary to serve the purposes of sentencing. *See, e.g., Pepper v. United* States, 562 U.S. 476, 491-93 (2011). His prior history does not diminish the genuine efforts that Mr. Rostan has made towards rehabilitation and recovery for over 18 years.

## CONCLUSION

For all of the above reasons, it is respectfully requested that the Court impose a reduced sentence upon Mr. Rostan pursuant to Section 404 of the First Step Act, by resentencing him within the now-applicable Guideline range of 168-210

months imprisonment, or under the new 851 enhancements to a twenty-five year minimum mandatory were the Court to find the 851 enhancements still apply.

Respectfully submitted,

David A. Rostan, Jr.

## CERTIFICATE OF SERVICE

I HEREBY certify that on, May 29, 2019, I hereby certify that a copy of the foregoing was mailed this 29 day of May, 2019 to interested parties.

David A. Rostan, Jr.

Reg. No: 23005-004

P.O. Box 50000

U.S. Penitentiary Yazoo

Yazoo City, MS  39194



✧✧23005-004✧✧
David Anthony Rostan
Reg. No. 23005-004
PO BOX '5000
Yazoo U. S. Penitentiary
Yazoo CITY, MS 39194
United States

✧✧23005-004✧✧
Court Clerk Of
Clerk's Office
400 N Miami AVE
United States Courthouse
Miami, FL 33128
United States

USMS INSPECTED