UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 97-6002-CR-MARTINEZ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAVID ANTHONY ROSTAN,

        Defendant.
_____/

**REPLY IN FURTHER SUPPORT OF**
**MOTION FOR COMPASSIONATE RELEASE**

    David Anthony Rostan, through undersigned counsel, respectfully submits this reply in further support of his motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A) (D.E. 377).

**The District Court is Not Limited to the Circumstances
Listed in § 1B1.13 When Considering Mr. Rostan's Request**

    Mr. Rostan has presented extraordinary and compelling circumstances that warrant a reduction in his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). In his motion, Mr. Rostan urged the Court to consider a number of circumstances, including his advanced age and deteriorating health, which is being insufficiently addressed by the Bureau of Prisons' medical system; the increased risk for severe illness he faces while incarcerated during the current global coronavirus pandemic; his demonstrated post-offense rehabilitation; and multiple intervening changes to the sentencing regime that resulted in the life sentence he is currently serving. (D.E.

1

377.)

In its Response, the government has chosen not to respond to many of these arguments, addressing only Mr. Rostan's health and the measures the BOP has taken in response to the pandemic. (*See* D.E. 379.) The government's response wholly fails to address Mr. Rostan's exemplary post-offense conduct and rehabilitation, as evidenced by his educational achievements, service to other inmates, and nearly spotless disciplinary record over the course of almost two and a half decades of imprisonment. The government has also chosen to remain silent regarding the intervening changes to the applicable sentencing regime and the fact that, if he were sentenced today, Mr. Rostan would not be subject to a mandatory life sentence. The government does not contest that Mr. Rostan has already served years in excess of the high end of the advisory guideline range that would apply if he were sentenced today. (*See* D.E. 379.)

The government has not contested any of these facts. Instead, it argues that the Court should not consider them, because the list of factors the Court may consider in determining whether extraordinary and compelling circumstances exist is bound by those enumerated in the Sentencing Commission's policy statement, USSG § 1B1.13. It makes this argument, however, in a single, conclusory sentence relegated to a footnote. (D.E. 379 at 9 n.9.) In support of its one-line argument, the government cites to a single district court case decided in August 2020. (*Id.* citing *Willingham v. United States*, 0:15-cr-60079-Cohn, D.E. 148 (S.D. Fla. August 5, 2020).)

The case on which the government relies, however, was decided before the growing consensus among every Court of Appeals that has examined the issue that district courts *are not* bound by the list of circumstances set forth at USSG § 1B1.13. *United States v. McCoy*, 981 F.3d 271 (4th Cir. Dec. 2, 2020); *United States v. Jones*, 980 F.3d 1098, (6th Cir. Nov. 20, 2020); *United States v. Gunn*, 980 F.3d 1178, (7th Cir. Nov. 20, 2020); *United States v. Zullo*, 976 F.3d 228 (2d Cir. 2020).

The policy statement at § 1B1.13 was promulgated before the passage of the First Step Act of 2018, which, for the first time, allowed a defendant to file a motion for reduction in sentence pursuant to § 3582(c)(1)(A) on his own behalf. And the guideline statement has not been amended since. Accordingly, every Court of Appeals to examine the issue has held that this policy statement does not apply to motions brought by a defendant pursuant to § 3582(c)(1)(A), and the district court is not limited to the factors listed therein when determining whether extraordinary and compelling circumstances warrant a reduction in sentence. *See McCoy*, 981 F.3d at 284. The district court may consider any extraordinary and compelling circumstance a defendant may raise. *Id.*

District courts across the country have reached the same conclusion. *See, e.g.*, *United States v. Jones*, __ F. Supp. 3d __, 2020 WL 5359636 (N.D. Cal. Aug. 27, 2020) (noting a "growing consensus" among district courts that there is no applicable policy statement by the Sentencing Commission regarding what constitutes extraordinary and compelling circumstances and citing cases). And several district courts in the Southern District of Florida have joined this growing consensus. As noted in Mr.

Rostan's original motion, the Honorable Cecilia M. Altonaga recently found that § 1B1.13 did not apply in deciding a § 3582(c)(1)(A) motion brought by the defendant; the court could consider whether any circumstances were sufficiently extraordinary and compelling to warrant a reduction in sentence. *United States v. Cano*, 95-CR-481-CMA D.E. 965. And even more recently, the Hon. Beth Bloom likewise found there was no applicable policy statement in the Guidelines regarding motions brought by the defendant, pursuant to § 3582(c)(1)(A), and that the court was free to determine what circumstances might qualify as extraordinary and compelling. *United States v. Starling*, 16-CR-20039-BB D.E. 52 at 4-5.

The growing number of decisions in courts across the country is compelled by a plain reading of the statute and § 1B1.13, which does not apply to motions brought by the defendant, following the passage of the First Step Act. Mr. Rostan urges this Court to adopt the well-reasoned holdings in those cases and examine all the information before the Court to determine whether extraordinary and compelling circumstances warrant a reduction in Mr. Rostan's sentence.

### In the Current Pandemic, Mr. Rostan's Deteriorating Health is an Extraordinary and Compelling Circumstance

Mr. Rostan's declining health, in the context of the current pandemic, constitutes an extraordinary and compelling circumstance, contrary to the government's assertion (*See* D.E. 379 at 10-11). Mr. Rostan is now 67 years old, and like many in his age cohort, his health is deteriorating. He suffers from hyperlipidemia, bouts of high blood pressure, depression, osteoarthritis, hearing loss, and skin cancer. And, unfortunately, Mr. Rostan's medical problems are not being

4

adequately addressed by the BOP. Despite many requests for appropriate medical attention, as evidenced in the extensive medical records the government submitted under seal, Mr. Rostan is not receiving the treatment he needs. Because he has not been seen by an orthopedic specialist, for example, the BOP has not approved him to have a cane, which he needs to get around safely, due to his osteoarthritis. He likewise has not received hearing aids since his last set was lost in transit when he was moved to FCI-Miami, nearly a year ago. These two failures alone make it exceedingly difficult for Mr. Rostan to safely and independently function in a prison setting.

And Mr. Rostan's more urgent health problems place him at increased risk of severe illness or death, should he contract COVID-19. While the CDC has not listed hyperlipidemia as an independent risk factor for severe illness, hyperlipidemia together with age, male sex, and high blood pressure are risk factors for coronary artery disease,[1] which is on the CDC's list of high risk factors.[2] And though the BOP doctor contended that Mr. Rostan's condition was "stable," even he acknowledged that Mr. Rostan "has chronic medical condition that make him that make him at a high risk of life threatening complication if he were to contract coronavirus infections." (D.E. 381-2 at 2.)

And the numbers of coronavirus infections within the BOP as a whole as well as within the very prison in which Mr. Rostan is incarcerated underline the risks of

---

[1] https://www.mayoclinic.org/diseases-conditions/coronary-artery-disease/symptoms-causes/syc-20350613
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions.

5

infection and severe illness Mr. Rostan faces every day that he remain in prison. Since the filing of Mr. Rostan's motion only three weeks ago, FCI-Miami has experienced another surge of coronavirus cases. On December 27, 2020, the day his motion was filed, FCI-Miami reported 127 confirmed cases—this included both active and "recovered" cases. As of today's date, January 19, 2021, FCI-Miami is reporting a total of 239 confirmed cases, including a staggering **101 active cases**.[3] So while the government touts the steps the BOP has taken to curb the spread of the virus (D.E. 379 at 4-8), these measures are simply insufficient, as evidenced by the ballooning numbers. And the proportions of the population infected in BOP custody, as compared with the general public, demonstrate that Mr. Rostan is much more at risk in custody than he would be if released. Each day that Mr. Rostan remains incarcerated, his life remains at risk.

### Mr. Rostan's Demonstrated Rehabilitation, in Combination with His Other Circumstances, is Extraordinary and Compelling

Mr. Rostan's exemplary post-offense conduct, considered in combination with the other circumstances of his case, support his request for a reduction in sentence. *See Zullo*, at 976 F.3d at 237-38 (holding that district court may consider post-offense conduct in combination with other circumstances in deciding whether extraordinary and compelling circumstances warrant a reduction in sentence).

Mr. Rostan received a life sentence that was mandatory at the time sentence was imposed. The Supreme Court has stressed that "life without parole is 'the second most severe penalty permitted by law.'" *Graham v. Florida*, 130 S. Ct. 2011, 2027

---

[3] https://www.bop.gov/coronavirus/ (accessed January 19, 2020).

(2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). Life without parole "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the convict, he will remain in prison for the rest of his days." *Id.* (internal quotations omitted).

When most people would submit to despair, Mr. Rostan has chosen to persist. He has made the choice to live honorably and improve himself not once but every day over the twenty-four years of his imprisonment. His positive choices are reflected in the courses he has completed, many of which are aimed at self-improvement. (D.E. 377 Ex. B.) His good character is reflected in his participation in the suicide watch program, helping the most troubled and despairing of his fellow inmates. And his daily choice to live within the rules is reflected in his nearly blemish-free disciplinary record—an extremely difficult achievement in the penitentiaries in which he has spent the bulk of his sentence—and his resulting assessment that he poses "**minimum**" risk, according to the BOP's own PATTERN risk assessment. (D.E. 377 Ex. C.)

In sum, Mr. Rostan has chosen a path of rehabilitation. And he made these choices with the sole aim of self-improvement, because until the passage of the First Step Act of 2018, he faced no realistic prospect of release. This is the strongest indication that Mr. Rostan's conduct over the past twenty-four years is the best predictor of his future behavior. He can be a productive and law-abiding member of our society and will do so if released.

Mr. Rostan's exemplary post-conviction conduct, in combination with his advanced age and deteriorating health and the amount of time served, constitute extraordinary and compelling circumstances and warrant a reduction in sentence. *See, e.g.*, *United States v. Cantu-Rivera*, 2019 WL 2578272 (S.D. Tex. June 24, 2019) (finding extraordinary and compelling circumstances warranting reduction in life sentence to time served where defendant demonstrated extraordinary rehabilitation, based, in part on completion of educational programs and involvement in BOP suicide watch program).

### Sweeping Changes to the Statutory Penalties and Sentencing Guidelines Support a Reduction in Mr. Rostan's Sentence

Lastly, the Court should consider the monumental changes to the sentencing regime that have occurred in the years since Mr. Rostan was sentenced. Since Mr. Rostan's conviction in the instant case, both Congress and the United States Sentencing Commission have recognized that the applicable penalties in cases like this one were unjustly high. As discussed in detail in his motion (D.E. 377 at 20-23), if Mr. Rostan were convicted of the same offenses today, the applicable penalties—both statutory and advisory—would be far different than those to which he was subjected at the time of sentencing. Even if the government filed a § 851 enhancement, it could only rely on a single prior offense, resulting in a statutory penalty range of fifteen years to life, rather than the mandatory life sentence he received. (*See* D.E. 377 at 21-22.) Having served twenty-four years, he has now served far in excess of that statutory minimum and years in excess of the high end of the applicable guideline range (210 to 262 months).

The Court can and should consider these intervening changes in the law as an extraordinary and compelling circumstance in support of Mr. Rostan's release. *See, e.g., McCoy*, 981 F.3d at 288 (district court appropriately considered severity of defendants' sentences and intervening changes to the sentencing regime in finding extraordinary and compelling circumstances). To be sure, the intervening changes to the law do not support an across-the-board reduction for all defendants serving sentences imposed under the old regime; rather, an individualized inquiry is required. *See id.* And a close consideration of the circumstances of Mr. Rostan's case, including the sentencing disparity with similarly situated defendants convicted today for the same offenses, considered together with his rehabilitation and declining health, supports his request for a reduction in sentence.

## Conclusion

Mr. Rostan's circumstances are extraordinary and compelling and warrant a reduction in sentence. He was convicted twenty-four years ago of non-violent drug offenses. The sentencing regime at that time mandated a life sentence; were he convicted of the same sentence today, he would receive a far lower punishment—likely less than the term he has already served. And whereas many people in similar circumstances would give in to hopelessness and anti-social behavior, Mr. Rostan has chosen a different path, one of rehabilitation. His continued incarceration is not necessary to meet the aims of sentencing, particularly the goals of deterrence and just punishment. A reduction in sentence to time served with a term of supervised release to follow will meet the ends of justice.

WHEREFORE for the reasons set forth above and in his original motion (D.E. 377), Mr. Rostan respectfully requests this Court grant his request for a reduction of sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A) and impose a sentence of time served with a period of supervision to follow.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: /s/Abigail E. Becker
Assistant Federal Public Defender
Florida Bar No. 72284
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
abigail_becker@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on January 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Abigail Becker*